JOHN D. MOOSE AND SANDRA MOOSE, & LYNN McLELLAN, PLAINTIFFS V. VERSAILLES CONDOMINIUM ASSOCIATION; MARILYN WILHELM, ANGIE STATHAKIS, RICHARD VALLEJO, CASSIE DRACOS, AND ANN PATTON, AS DIRECTORS AND OFFICERS OF VERSAILLES CONDOMINIUM ASSOCIATION, AND INDIVIDUALLY; ASSOCIATION MANAGEMENT GROUP OF CHARLOTTE, INC., AND CNE SERVICES, INC., DEFENDANTS

No. COA04-1034

(Filed 5 July 2005)

**1. Appeal and Error— cross-assignment of error—not properly preserved for appeal**

Although an appellee may cross-assign error to any action of the trial court which was properly preserved for appellate review, a cross-assignment was not properly preserved where it was not included in the record.

**2. Arbitration and Mediation— right to compel lost—delay**

Defendant's delayed effort to compel arbitration waived that right where plaintiff was placed at a disadvantage in discovery and incurred additional attorney fees.

Appeal by defendant Association Management Group of Charlotte, Inc. from order filed 26 March 2004 by Judge J. Gentry Caudill in Mecklenburg County Superior Court. Heard in the Court of Appeals 13 April 2005.

*Richard H. Robertson for plaintiff-appellee.*

*Baucom, Claytor, Benton, Morgan & Wood, P.A., by Rex C. Morgan and Jason B. James, for defendant-appellant Association Management Group of Charlotte, Inc.*

BRYANT, Judge.

Association Management Group of Charlotte, Inc. ("AMG"/ defendant) appeals from an order filed 26 March 2004, denying defendant's motion to compel arbitration.

John D. Moose, Sandra Moose, and Lynn McLellan (plaintiffs) are members of Versailles Condominium Association and unit owners in "The Condominium at Versailles," Building No. 1, located at 2600 Park Road, Charlotte, North Carolina (hereinafter "the property"). On or about 1 December 2001, the property and the common area immediately surrounding the property were damaged by a fire that originated in one of the downstairs units in the 2600 building. The resulting damage to plaintiffs' property was determined to be "partial destruction" as defined in paragraph 21 of the declarations and by-laws of the Versailles Condominium Association (hereinafter the "declarations and by-laws"). Subsequent to the loss, Versailles contracted with CNE, a general contractor, to perform necessary structural and cosmetic repairs to plaintiffs' property as well as all necessary repairs to the common areas and other portions of the condominium units for which Versailles was responsible pursuant to the declarations and by-laws.

On 7 March 2003, plaintiffs filed suit naming as defendants: Versailles Condominium Association; Marilyn Wilhelm, Angie Stathakis, Richard Vallejo, Cassie Dracos, and Ann Patton, as Directors and Officers of Versailles Condominium Association, and Individually (hereinafter "the Board"); Association Management Group of Charlotte, Inc.; and CNE Services, Inc. (collectively defendants). In their complaint, plaintiffs asserted causes of action against Versailles and the Board for breach of fiduciary relationship, as well as breach of trust. Plaintiffs alleged two causes of action against AMG and CNE: breach of contract and unfair or deceptive acts or practices pursuant to N.C. Gen. Stat. § 75-1.1(a).

**MOOSE v. VERSAILLES CONDO. ASS'N**

[171 N.C. App. 377 (2005)]

Plaintiffs' complaint centered around allegations that the repairs to their property and the surrounding common areas were not performed in a timely and/or workmanlike manner. With respect to the claims against AMG, plaintiffs alleged, *inter alia*, they were third-party beneficiaries of Versailles' contract with AMG for the management of the condominiums and AMG had failed to "fully and substantially perform the duties required of it pursuant to its management contract with [Versailles]."

Counsel for defendants Versailles, the Board, and AMG filed an answer to plaintiffs' complaint on behalf of all defendants on 12 May 2003, with the exception of CNE who was represented by other counsel. The answer filed by counsel for defendants Versailles, the Board, and AMG did not contain a motion to compel arbitration and stay proceedings.

Following service of plaintiffs' complaint and summons, discovery was undertaken on behalf of both plaintiffs and all defendants. Plaintiffs served defendants, including AMG, with requests for production of documents on 5 May 2003. AMG timely submitted responses to plaintiffs' request. At the same time, on 16 June 2003, counsel for defendants Versailles, the Board, and AMG served plaintiffs with defendants' first set of interrogatories and request for production of documents. Plaintiffs timely responded to defendants' discovery requests. Additionally, CNE served plaintiffs with interrogatories and request for production of documents on 28 May 2003, to which plaintiffs timely responded.

Plaintiffs filed a motion for leave to amend the complaint on 19 September 2003. Plaintiffs' motion was heard at the 30 October 2003 session of Mecklenburg County Superior Court with the Honorable David S. Cayer presiding. The trial court granted plaintiffs' motion for leave to amend the complaint, and plaintiffs filed their amended complaint on 10 November 2003.

Plaintiffs' amended complaint set forth new factual allegations against AMG, as well as new causes of action against AMG for breach of the implied covenant of good faith and fair dealing. The new factual allegations against AMG included, but were not limited to, paragraph 47 of the amended complaint, which stated:

At all times herein alleged, the Defendant AMG knew that the Association and the Directors and Officers of the Association stood in a confidential and fiduciary relationship to the Plaintiffs,

and that this relationship imposed a fiduciary duty upon the Association and the Directors and Officers for whom and in whose place and stead AMG was acting.

In response to plaintiffs' amended complaint, counsel for defendants Versailles and the Board filed an amended answer and motion to dismiss. AMG filed a motion to compel arbitration pursuant to the arbitration clause of the contract between Versailles and AMG—the contract under which plaintiffs claim third-party beneficiary status—and a motion to dismiss.

AMG's motions were heard at the 11 February 2004 session of Mecklenburg County Superior Court with the Honorable J. Gentry Caudill presiding. The trial court denied AMG's motion to dismiss, and allowed plaintiffs' oral motion to amend their complaint a second time to properly allege third-party beneficiary status pursuant to the contract between AMG and Versailles.

With respect to AMG's motion to compel arbitration, the trial court, after reviewing the affidavits filed by the parties, entered the following findings of fact:

10. AMG, as a matter of right, engaged in extensive discovery procedures as provided for by the Rules of Civil Procedure, N.C.G.S. § 1A-1, Rule 26, et seq. However, in arbitration parties may only engage in discovery with permission of the arbitrator as provided for by the Uniform Arbitration Act pursuant to N.C.G.S. §1-567.8 or the Revised Uniform Arbitration Act pursuant to N.C.G.S. §1-569.17. As such, AMG has utilized and benefited [sic] from discovery procedures under the Rules of Civil Procedure; discovery procedures that would be within the discretion of the arbitrator if this matter were referred to arbitration.

11. Plaintiffs, according to the affidavit submitted by Plaintiffs' counsel, have paid a total of $32,854.00 in legal fees and costs to date in pursuing this civil action. A significant portion of this is attributable to providing information to AMG, and would not have been incurred had AMG sought arbitration without delay.

Based upon these findings of fact, the trial court made the following conclusions of law:

7. If arbitration were now ordered, Plaintiffs would be prejudiced by Defendant AMG's delay in seeking arbitration.

8. By its acts and conduct, AMG has impliedly waived any

right, which it may have to arbitration pursuant to the agreement to arbitrate.

Despite finding the management agreement contained a valid and enforceable arbitration provision that was in force and binding upon the parties, the trial court denied AMG's motion to compel arbitration.

_____

[2] The dispositive issue on appeal is whether the trial court erred in denying defendant's motion to compel arbitration[1].

As a preliminary matter, we note the denial of a motion to compel arbitration is interlocutory in nature. *Raspet v. Buck*, 147 N.C. App. 133, 135, 554 S.E.2d 676, 677 (2001). This Court, however, has held " 'the right to arbitrate a claim is a substantial right which may be lost if review is delayed, and an order denying arbitration is therefore immediately appealable.' " *Boynton v. ESC Med. Sys., Inc.*, 152 N.C. App. 103, 106, 566 S.E.2d 730, 732 (2002) (citation omitted).

When a party claims a dispute is covered by an agreement to arbitrate and the other party denies the existence of an arbitration agreement, the trial court must determine whether an arbitration agreement actually exists. N.C.G.S. § 1-567.3 (2001). "The question of whether a dispute is subject to arbitration is an issue for judicial determination." *Raspet*, 147 N.C. App. at 136, 554 S.E.2d at 678. This judicial determination involves the two-step process of ascertaining: "(1) whether the parties had a valid agreement to arbitrate, and also (2) whether 'the specific dispute falls within the substantive scope of that agreement.' " *Raspet*, 147 N.C. App. at 136, 554 S.E.2d at 678 (citation omitted).

Only when a valid arbitration agreement exists can a matter be settled by arbitration. N.C.G.S. § 1-567.2 (2001). "[T]he party seek-

_____

[1] 1. In their appellate brief, plaintiffs cross-assign as error, the trial court's determination that a valid arbitration agreement existed between the Versailles Condominium Association and AMG and was binding upon plaintiffs. Although plaintiffs correctly cite, in their brief, N.C. R. App. P. 10(d) for the proposition that an "appellee may cross-assign as error any action or omission of the trial court which was properly preserved for appellate review," plaintiff failed to include this cross-assignment of error in the record, in violation of N.C. R. App. P. 10(a) ("the scope of review on appeal is confined to a consideration of those assignments of error set out in the record on appeal.") Accordingly, this cross-assignment of error has not been properly preserved for appellate review. *See also, Viar v. North Carolina Dep't of Transp.*, 359 N.C. 400, 610 S.E.2d 360 (2005) ("The North Carolina Rules of Appellate Procedure are mandatory and 'failure to follow these rules will subject an appeal to dismissal.' ").

ing arbitration must show that the parties mutually agreed to arbitrate their disputes." *Routh v. Snap-On Tools Corp.*, 108 N.C. App. 268, 271-72, 423 S.E.2d 791, 794 (1992). "The trial court's findings regarding the existence of an arbitration agreement are conclusive on appeal where supported by competent evidence, even where the evidence might have supported findings to the contrary." *Sciolino v. TD Waterhouse Investor Servs., Inc.*, 149 N.C. App. 642, 645, 562 S.E.2d 64, 66 (2002). The trial court's determination of whether a dispute is subject to arbitration, however, is a conclusion of law reviewable *de novo*. *Raspet*, 147 N.C. App. at 136, 554 S.E.2d at 678.

Here, the trial court found a valid arbitration agreement existed, but defendant waived its right to arbitration by undertaking actions which would prejudice plaintiffs if arbitration were compelled. *Cyclone Roofing Co. v. David M. LaFave Co.*, 312 N.C. 224, 229, 321 S.E.2d 872, 876 (1984).

> A party may be prejudiced if, for example, it is forced to bear the expenses of a lengthy trial; evidence helpful to a party is lost because of delay in the seeking of arbitration; a party's opponent takes advantage of judicial discovery procedures not available in arbitration; or, by reason of delay, a party has taken steps in litigation to its detriment or expended significant amounts of money thereupon.

*Cyclone Roofing Co.*, 312 N.C. at 229-30, 321 S.E.2d at 876-77, (internal citations omitted). "Waiver of a contractual right to arbitration is a question of fact." *Id.* In this regard, "[f]indings of fact, when supported by any evidence, are conclusive on appeal. Conclusions of law, even if stated as factual conclusions, are reviewable." *Prime South Homes, Inc. v. Byrd*, 102 N.C. App. 255, 258, 401 S.E.2d 822, 825 (1991) (quoting *Fairchild Realty Co. v. Spiegel, Inc.*, 246 N.C. 458, 465, 98 S.E.2d 871, 876 (1957)). Nevertheless, when there is evidence in the record which supports the trial court's findings of fact, and those findings support its conclusions of law that a party has waived its right to compel arbitration, the decision must be affirmed. *Prime South Homes*, 102 N.C. App. at 261, 401 S.E.2d at 827.

Defendant contends the trial court erred in concluding defendant had waived its right to compel arbitration, and specifically alleges certain findings of fact are not supported by the evidence. The trial court based its denial of defendant's motion on the following conclusions of law:

7. If arbitration were now ordered, Plaintiffs would be prejudiced by Defendant AMG's delay in seeking arbitration.

8. By its acts and conduct, AMG has impliedly waived any right which it may have to arbitration pursuant to the agreement to arbitrate.

The trial court supported its conclusions of law by the following findings of fact which AMG alleges are not supported by the evidence:

10. AMG, as a matter of right, engaged in extensive discovery procedures as provided for by the Rules of Civil Procedure, N.C.G.S. § 1A-1, Rule 26, et seq. However, in arbitration parties may only engage in discovery with permission of the arbitrator as provided for by the Uniform Arbitration Act pursuant to N.C.G.S. §1-567.8 or the Revised Uniform Arbitration Act pursuant to N.C.G.S. §1-569.17. As such, AMG has utilized and benefited [sic] from discovery procedures under the Rules of Civil Procedure; discovery procedures that would be within the discretion of the arbitrator if this matter were referred to arbitration.

11. Plaintiffs, according to the affidavit submitted by Plaintiffs' counsel, have paid a total of $32,854.00 in legal fees and costs to date in pursuing this civil action. A significant portion of this is attributable to providing information to AMG, and would not have been incurred had AMG sought arbitration without delay.

Defendant contends the evidence does not support the findings in paragraph 10. Defendant further contends that since the court made no findings the witnesses deposed would have been available to attend an arbitration hearing, the record does not support a finding defendant took advantage of discovery procedures that would be unavailable in arbitration. Defendant argues, therefore, the court's conclusion defendant waived its right to compel arbitration is not supported by the evidence.

Defendant relies upon the authority of *Sullivan v. Bright*, 129 N.C. App. 84, 497 S.E.2d 118 (1998); however, its reliance is misplaced. *Sullivan* construed N.C. Gen. Stat. § 1-567.8(b), which makes depositions in arbitration dependent upon witness availability. The issue in *Sullivan* was whether a witness who had been deposed under the Rules of Civil Procedure would have been unavailable to attend an arbitration hearing, and under N.C. Gen. Stat. § 1-567.8(b) subject to deposition in arbitration anyway. Because there was no evidence in

the record one way or the other, it is to be expected that the court would find no waiver of arbitration rights. The court's duty was to decide the case before it on the record, and not speculate about availability of a witness outside the record. *Sullivan* is distinguishable from the case under consideration.

The applicable North Carolina General Statutes provide "[o]n application of a party and for use as evidence, the arbitrators may permit a deposition to be taken . . . of a witness who cannot be subpoenaed or is unable to attend the hearing." N.C. Gen. Stat. § 1-567.8(b) (2001). Plaintiffs in this lawsuit are not witnesses who cannot be subpoenaed or are unable to attend the arbitration hearing. They filed the lawsuit and are vitally interested in it. They appeared for their depositions voluntarily, and without being subpoenaed. They are local residents residing at the same addresses where they resided when they filed this lawsuit, and they could have been subpoenaed to attend an arbitration hearing. Defendant did not present any evidence to the contrary. Accordingly, plaintiffs would not be subject to being deposed in arbitration.[2] By taking their depositions before requesting arbitration, defendant took advantage of a discovery procedure not available in arbitration in order to gain access to evidence.

Having benefitted therefrom, defendant demanded arbitration, cutting off plaintiffs' ability to obtain discovery. When defendant's motion to compel discovery was heard, plaintiffs were in need of obtaining discovery from defendant, and were actively pursuing necessary discovery. Plaintiffs' motion to compel discovery against defendant was heard at the same hearing that resulted in the order appealed from, and defendant was ordered to respond to plaintiffs' discovery requests within 30 days of the entry of the order. In addition, plaintiffs were actively seeking to take the depositions of a former employee of defendant who was in charge of the Association account and the Nationwide Insurance Company adjuster who handled the fire loss claims for the Association's carrier.

Defendant further contends no evidence exists as to the amount of legal fees and costs which plaintiffs have been required to pay by reason of defendant's delay in requesting arbitration. Again, defendant relies upon *Sullivan* and again its reliance is misplaced. In *Sullivan*, the trial court found the unnamed insurance carrier

2. Note, however, under current North Carolina law, an "arbitrator may permit any discovery the arbitrator decides is appropriate under the circumstances . . . ." N.C. Gen. Stat. § 1-569.17(c) (2003). This new law is applicable to "an agreement to arbitrate made on or after January 1, 2004." N.C. Gen. Stat. § 1-569.3(a) (2003).

incurred significant expense as a result of the plaintiff's delay in seeking arbitration. Our Court determined the record evidence did not support this finding "since there is no statement indicating how much money [the carrier] spent by reason of plaintiff's forbearance." *Sullivan*, 129 N.C. App. at 87, 497 S.E.2d at 121. Such is not the case here.

There is evidence in the record which supports the trial court's findings of fact that plaintiffs "have paid a total of $32,854.00 in legal fees and costs to date in pursuing this civil action [and a] significant portion of this is attributable to providing information to AMG, and would not have been incurred had AMG sought arbitration without delay." Plaintiffs submitted a detailed billing record which itemized the attorney's fees incurred by plaintiffs from the date they employed their attorney to file suit through December 2002, prior to defendant requesting arbitration. The charges included time spent preparing for and participating in depositions, drafting written discovery responses and requests, and preparing for and appearing in court. These costs resulted from defendant's delay in demanding arbitration, and would not have been incurred had defendant made a timely demand for arbitration.

As stated previously, when there is evidence in the record which supports the trial court's findings of fact, and those findings support its conclusions of law that a party has waived its right to compel arbitration, the decision must be affirmed. *Prime South Homes*, 102 N.C. App. at 261, 401 S.E.2d at 827. In this case, the trial court's findings of fact are supported by the evidence and the conclusions of law are supported by the findings of fact. Therefore, defendant has impliedly waived its right to compel arbitration. This assignment of error is overruled.

Affirmed.

Judges McGEE and STEELMAN concur.